IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 9, 2012

**FLOYD RODRIQUEZ JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**Nos. 40601144, 40700186, 40700310      John H. Gasaway, Judge**

_____

**No. M2012-00747-CCA-R3-PC Filed - February 12, 2013**

_____

The petitioner, Floyd Rodriquez Johnson,[1] appeals the Montgomery County Circuit Court's denial of his petition for post-conviction relief. The petitioner is currently serving an effective twenty-five year sentence in the Department of Correction following his guilty pleas to multiple drug charges. On appeal, the petitioner contends that his guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of counsel. Specifically, he contends trial counsel was ineffective by failing to ensure that the petitioner understood the terms of the plea agreement and the resulting sentencing consequences if the petitioner failed to complete a drug rehabilitation furlough. Following review, we conclude that the post-conviction court properly determined that the petitioner was not denied his right to the effective assistance of counsel and that the pleas were entered knowingly and voluntarily. The denial of post-conviction relief is affirmed.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Floyd Rodriquez Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; John W. Carney, Jr., District Attorney General; and John E. Finklea, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

---

[1]There is indiction in the record that the petitioner is also known by the name of Floyd Harris, his mother's maiden name.

## Procedural History and Factual Background

A Montgomery County grand jury issued multiple indictments against the petitioner. In case number 40601144, he was charged with possession with intent to sell more than .5 grams of cocaine, possession of marijuana, and contributing to the delinquency of a minor. In case number 40700186, he was charged with the sale and delivery of more than .5 grams of marijuana. Finally, in case number 40700310, the petitioner was indicted for possession with intent to sell more than .5 grams of cocaine, possession of marijuana, and possession of drug paraphernalia. Following negotiations with the State, the petitioner was allowed to plead to two counts of possession of more than .5 grams of cocaine with intent to sell and one count of the sale of more than .5 grams of cocaine. All other charges were dismissed. The underlying facts, as recited at the guilty plea hearing are as follows:

> [In case number 4060114] the female in the car, the passenger, had cocaine and marijuana under her shirt and the discovery indicates that the [petitioner] told the police that it belonged to him.
>
> [In case number 40700186] the [petitioner] is in a video tape. He has seen the video, he has had a chance to review it at the jail, sold cocaine to informant whose identity has been made known to us in the video tape. I think the State will contend that he continually repeated his cell phone number during the transaction.
>
> [In case number 40700310] the police were called to 66A Lincoln Homes. . . . [D]uring a subsequent search, they learned the [petitioner] had a room allegedly in the Lincoln Homes apartment and they then obtained a search warrant, wherein over a half of a gram of cocaine was found, in what [the State] alleged to be the [petitioner's] room.

*State v. Floyd Rodriquez Johnson*, No. M2009-01270-CCA-R3-CD (Tenn. Crim. App., at Nashville, July 22, 2010). During the same hearing, the record indicates that the petitioner was also admitting probation violations, based upon these new charges, in other separate cases. In those four cases, the petitioner had previously been sentenced to an effective ten-year sentence.

Following the recitation of the facts, trial counsel for the petitioner addressed the court, stating that the State had agreed a furlough period prior to sentencing in the cases to allow the petitioner to complete a drug rehabilitation program at Lighthouse Mission Ministries. If the court approved the action, and the petitioner successfully completed the program, the State agreed to recommend that the balance of any sentences imposed be served

on community corrections. The agreement also called for re-sentencing disposition to occur at the same time in the probation violation cases. Trial counsel stated that he had "extensively" spoken with the petitioner about the agreement and "answered all of his questions."

Prior to acceptance, the court reviewed the dates of the new charges and noted that the petitioner had been on bond when some were committed. The court expressed reluctance to allow the petitioner, whom it stated had shown "contempt for the Judicial Process" by his continued sale of drugs, a chance to participate in a rehabilitation program. After questioning the petitioner regarding his drug usage, the court reluctantly agreed to the proposal but stated on the record:

> . . . I am going to take this proposal but you[r] going to rehab is a recommendation from the State, it doesn't mean that I have to swallow it, I likely will, but I don't want you coming in here in six months and they say well, you know - - he had a few problems, but he managed to struggle through, that is not going to impress me. So before you plead guilty to all this, you just need to understand - - I am not going to give you the benefit of any doubt, you are going to have to walk the straight and narrow. You are going to have to do it just right. You sure you want to do that?

The petitioner responded in the affirmative, and the court proceeded to review the rights the petitioner would be waiving by entering the pleas. The court also specifically informed the petitioner that he had the right to plead not guilty and proceed to trial. The petitioner responded that he understood.

The court next informed the petitioner that the crimes to which he was pleading guilty were Class B felonies, that he was a Range II offender, and that the possible range of punishment was twelve to twenty years on each charge. After the petitioner responded that he understood, the court further commented:

> Also, you need to understand that the plan here is for you to go to rehab for a minimum of six months, for you to complete that and come back into Court, the State make[s] a recommendation that whatever the sentence is by the Court, that it be with community correction[s]. And that these other ten year sentences [for the probation violations] will be transferred to community corrections. Just so that you understand the seriousness of this, just on the new charges, forget about the ten years, just the new charges, you can get as much as twelve years or a[s] little - - a minimum of twelve. You can get as much as eighty years[.] Plus by being sentenced to community corrections, whatever

-3-

the Court sentences you - - suppose it is twelve years concurrent, I can change that if you violate community corrections and make them consecutive and even add on to it. I am trying to get through to you . . . that today is the day, you will either go one way or the other[.] If you go the way you say you want to go, then you have actually got an opportunity to be on a release status, work, and have a life. Or if you go the other way, you could end up in the penitentiary for a very, very, very long time, as much as eighty years. And I am not going to put up with any shenanigans from you. I'll just tell you that right now. Do you understand me?

The petitioner again responded in the affirmative. The court then accepted the pleas, and the petitioner was released to Lighthouse Mission Ministries' personnel.

On June 9, 2009, a sentencing hearing was held where it was ascertained that the petitioner had not successfully completed the drug rehabilitation. The petitioner testified in his own behalf, stating that he was removed from the program because of a fight which he had broken up at his workplace. After reviewing the evidence presented, the trial court imposed an effective ten-year sentence in the cases for which the petitioner had violated probation. Thereafter, applying various enhancing and mitigating factors, the trial court imposed concurrent sentences of twelve years, fifteen years, and fifteen years. That effective fifteen-year sentence was ordered to be served consecutively to the effective ten-year sentence in the revocation cases, for a total effective sentence of twenty-five years.

The petitioner thereafter filed a direct appeal with this court challenging the trial court's decision that his sentences be served in incarceration. *Id*. Following review, the decision of the trial court was affirmed, and the petitioner's application for permission to appeal to the Tennessee Supreme Court was denied. *Id*.

The petitioner subsequently filed a pro se petition for post-conviction relief alleging that his pleas were not entered knowingly and voluntarily because trial counsel was ineffective. Following the appointment of counsel, an amended petition was filed. Thereafter, on March 13, 2012, a post-conviction hearing was held at which the petitioner and his attorney testified.

The petitioner clarified at the beginning of his testimony that he had no complaints against the attorney who represented him at his sentencing hearing- he faulted only the attorney who represented him prior to and at the acceptance hearing of his guilty pleas ("trial counsel"). The petitioner testified that at the time of the pleas, he was only twenty-two years old with an eleventh-grade education. Although he had previously entered pleas in at least four cases, he testified that he was not familiar with the judicial process and did not

understand the plea and sentencing process.

The petitioner testified that trial counsel met with him on only two to three occasions prior to the guilty plea hearing. He denied that trial counsel had to contact him while he was released on bond because he failed to attend scheduled meeting with trial counsel at his office. The petitioner also denied that he had received multiple written communications from trial counsel while he was incarcerated, including one a few days prior to entry of the pleas detailing the entire agreement. The petitioner stated that trial counsel failed to discuss all the evidence against him in the pending cases, stating that trial counsel seemed focused on the one case in which the evidence was the strongest. The petitioner did acknowledge that trial counsel informed him that he thought it likely that the petitioner would be convicted in that case and that it might result in convictions in the remaining cases. The petitioner testified that he rejected two prior offers from the State and that he is the one that brought up the possibility of a rehabilitation program to trial counsel.

After discussions began, trial counsel informed him that he was pretty sure he would get to go to rehab but that the final decision lay with the trial court. The petitioner testified that he understood the agreement to mean that if he completed the program, he would serve the balance of his sentences on community corrections. If he failed to complete the program, he understood that he would serve twelve years at thirty-five percent. The petitioner indicated that there was no discussion of consecutive sentencing.

According to the petitioner, trial counsel told him to go into the courtroom on the day of his plea submission hearing and to just agree with everything said. The petitioner acknowledged that the trial court had informed him about waiving trial rights and that he answered that he understood. The petitioner also recalled that the court had mentioned that if he failed to complete the program, the sentences could be longer. The petitioner claimed he thought this was irrelevant and a "scare tactic." He insisted that he understood, because that is what trial counsel had told him, that the sentence would be twelve years at thirty-five percent to serve if he failed to complete the rehabilitation program. Had he understood the true range of possible punishment he faced, *i.e.*, the twenty-five year term he is currently serving, the petitioner contends he would not have entered the pleas.

Trial counsel testified that he was appointed to represent the petitioner while he was incarcerated but that the petitioner was eventually released on bond. Trial counsel testified that the petitioner did not keep his appointments to meet with trial counsel at his office to discuss the defense. Because the petitioner kept picking up new charges, his bond was eventually revoked. Once the petitioner was returned to jail, trial counsel indicated that he wrote him numerous letters detailing the situation in an effort to make sure the petitioner understood everything. Trial counsel did acknowledge that a great deal of his

communication with the petitioner was written, but he did visit him at the jail at times.

Trial counsel testified that he reviewed and discussed the facts with the petitioner regarding each of his pending cases. Trial counsel did agree that the evidence in one case was particularly stronger than in the others, and he discussed the strengths and weakness of each case with the petitioner. Trial counsel specifically covered the range of possible punishment in each case with the petitioner. He also informed the petitioner about the possibility of consecutive sentencing being imposed, particularly with regard to the sentences resulting from the revocation of probation.

Trial counsel testified that after the petitioner had been in jail for approximately four months, he expressed a strong desire to get out. Trial counsel stated he began negotiations with the State. Two offers were made and rejected by the petitioner. During this period, trial counsel stated that he was still continuing to prepare for trial. Trial counsel informed the petitioner that he felt that he would be convicted in some cases but not others if he chose to proceed to trial. Nonetheless, the State refused to discuss a plea agreement that did not encompass all cases. Trial counsel testified that he wrote multiple letters to the petitioner explaining the situation.

Trial counsel testified that in December, 2007, the petitioner expressed an interest in getting into a rehabilitation program because he thought it would benefit him. Trial counsel presented this information to the State, and, eventually, an agreement was reached. After the terms of the agreement were set, trial counsel he had a long letter detailing those terms in great detail hand delivered to the petitioner at the jail. In that letter, trial counsel stated that he went through each case number and provided the facts and nature of each case, as well as the possible ranges of punishment.

Trial counsel also testified that he recalled that at the plea submission hearing, the court had expressly informed the petitioner of the possible consequences if he did not complete the rehabilitation program. Trial counsel testified that he had no reason to believe that the petitioner did not have a true understanding of the agreement. Trial counsel stated that the petitioner was happy with the deal, as it allowed him to be released from custody.

After hearing the hearing evidence presented, the post-conviction court, by written order, denied the petition. This appeal followed.

**Analysis**

On appeal, the petitioner contends that his guilty pleas were not knowingly and voluntarily entered because he was denied the effective assistance of counsel. Specifically,

he contends that trial counsel was ineffective for failing to ensure his understanding of the plea agreements and the consequences of not completing the rehabilitation program. In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id*. at 458.

## I. Ineffective Assistance of Counsel

As his only ground for ineffective assistance of counsel, the petitioner contends that trial counsel was ineffective by failing to ensure that he understood the terms and conditions of the plea agreement, including the possible resulting sentences if the petitioner failed to complete the rehabilitation program. The petitioner insists that trial counsel explained that he would only serve twelve years at thirty-five percent if he failed to complete the program. In support of his argument, he relies up the fact that there was no proof the letter written by trial counsel was ever delivered to him, that trial counsel could not specifically recall a conversation reviewing the agreement with the petitioner, and trial counsel's statement that the agreement was "more complex than usual" because of the number of cases involved.

After review of the record, we are unable to find any evidence which preponderates against the post-conviction court's finding that trial counsel's "representation of [the petitioner] was not ineffective, in fact, he did a good job." In fact, the only evidence put forth to show that trial counsel failed to ensure the petitioner's understanding of the agreement is the petitioner's own self-serving statement that he did not understand. However, in its findings, the post-conviction court also specifically accredited the testimony of trial counsel over that of the petitioner. It has been noted on multiple occasions by this court that we will not reweigh or reevaluate such credibility determinations made by the trier of fact. *See Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). All questions involving the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State,* 18 S.W.3d 152, 156 (Tenn. 1999); *Henley*, 960 S.W.2d at 578-79.

Trial counsel testified at the hearing that he extensively covered the evidence against the petitioner in each case and the possible sentences he faced. Trial counsel also testified that he explained to the petitioner the possibility of consecutive sentencing. Trial counsel testified that he wrote twelve to eighteen letter to the petitioner while he was incarcerated explaining various aspects of the case to him. He specifically testified about a two to three page letter he wrote to the petitioner which detailed the final settlement agreement between

the parties. Although trial counsel could not recall the exact conversation between him and the petitioner, he testified that he was certain that he had talked to the petitioner before court about the detailed letter and the terms of the guilty pleas. Thus, based upon trial counsel's testimony, we can not conclude that trial counsel rendered deficient performance to the petitioner.

## B. Voluntariness of the Guilty Plea

Having rejected the petitioner's claim that trial counsel was deficient in explaining the plea agreement, the petitioner is somewhat constrained in his effort to establish that his pleas were not entered knowingly, intelligently, and voluntarily. The record establishes that both trial counsel and the trial court explicitly informed the petitioner of the terms and consequences contained within his plea agreement. The court vehemently stressed to the petitioner those terms prior to accepting the agreement. The petitioner stood before the court and stated he understood and that he wished to enter the pleas. The petitioner was twenty-two years old at the time and had prior felony convictions.

A defendant's plea of guilty constitutes an admission in open court that the defendant committed the acts charged in the indictment. *Brady v. United States*, 397 U.S. 742, 748 (1970). The plea, however, is more than an admission; it is the defendant's consent that judgment of conviction may be entered without a trial. *Id*. A defendant's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than simply lip service. Indeed, the defendant's sworn statements and admissions of guilt stand as witness against the defendant at the post-conviction hearing when the defendant disavows those statements. We note that in this case the transcript of the plea hearing is strong evidence against and belies the petitioner's contentions. Following review of the record, we conclude that the petitioner has failed to establish that the proof preponderates against the findings made by the post-conviction court that he received the effective assistance of counsel and that his plea was entered knowingly and voluntarily. *See State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977).

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE